UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA * | |
| * | |
| v. * | |
| * | |
| VINCENT M. PORTALLA a/k/a/ VINCENT * | Criminal Action No. 84-00142-ADB; |
| M. MARINO, * | Civil Action No. 17-11720-ADB (related) |
| * | |
| Defendant. * | |
| * | |
| * | |

**MEMORANDUM AND ORDER DENYING WRIT OF ERROR CORAM NOBIS**

BURROUGHS, D.J.

Petitioner Vincent M. Marino, previously known as Vincent M. Portalla, is currently serving a thirty-five-year sentence following his December 1999 convictions for violations of the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1962, and conspiring to murder thirteen individuals in aid of racketeering in violation of 18 U.S.C. § 1959. See United States v. Marino, No. 97-40009-NMG (D.Mass.), ECF Nos. 1079, 1151; see also United States v. Marino, 277 F.3d 11 (1st Cir. 2002).

Presently before this Court is Petitioner's motion for a writ of error coram nobis with respect to his 1984 convictions on three counts of knowingly making a false statement in the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6), and two counts of receiving a firearm while under indictment, in violation of 18 U.S.C. § 922(h)(1).[1]  For the reasons explained below, Petitioner's motion for a writ of error coram nobis is DENIED.

---

[1] The provision of Title 18 under which Petitioner was convicted is now contained, in part, in 18 U.S.C. § 922(n).

I.      BACKGROUND

On April 12, 1984, Petitioner was indicted on three counts of knowingly making a false statement in the acquisition of a firearm and two counts of receiving a firearm while under indictment. [ECF No. 1]. The charges stemmed from Petitioner's purchasing of three firearms while under indictment in New Hampshire for conspiring to commit armed robbery and other offenses and his failing to acknowledge the indictment on an ATF form that he completed in connection with the firearms purchase. Petitioner pled guilty to all five counts on July 16, 1984. Id. at 4. He was sentenced on August 3, 1984 to eighteen months imprisonment on each count to be served concurrently, and he received a judicial recommendation that the sentences be served concurrently with a term of imprisonment Petitioner was then serving for a different conviction. Id. at 5. Petitioner did not appeal his conviction or sentence, nor did he pursue post-conviction relief under 28 U.S.C. § 2255.[2] Id. In December 1999, long after he finished serving the eighteen-month sentence for his 1984 convictions, Petitioner was convicted by a jury of racketeering and conspiracy to murder in aid of racketeering and sentenced to 420 months imprisonment. See United States v. Marino, C.R. No. 97-40009-NMG-10 (D. Mass. Apr. 13, 2000), ECF No. 1151, aff'd Marino, 277 F.3d 11. Petitioner claims that his 1984 convictions influenced the sentence that he received for the 1999 convictions,[3] and that he was not warned of this potential collateral consequence at the time of the 1984 guilty plea—among numerous other supposed violations of his fundamental rights.

---

[2] Defendant-petitioner argues that he asked his counsel at the time, Mr. Walter Underhill, to appeal, but Mr. Underhill failed to do so. See [ECF No. 14 at 4].
[3] The government has referred to the racketeering convictions as the 2000 convictions. The Court has opted to use the year of the jury's verdict, although the sentence was imposed in 2000.

## II. LEGAL STANDARD

In federal criminal cases, the writ of error coram nobis is a remedy of last resort for the correction of fundamental errors of fact or law. United States v. Morgan, 346 U.S. 502, 507 n.9 (1954); United States v. George, 676 F.3d 249, 253 (1st Cir. 2012). "The authority to grant coram nobis relief derives from the All Writs Act, 28 U.S.C. § 1651(a), which empowers federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" See United States v. Sawyer, 239 F.3d 31, 38–39 (1st Cir. 2001) (reviewing history of the writ). The writ is ordinarily only available to a criminal defendant who is no longer in custody and for whom the writ of habeas corpus or relief under 28 U.S.C. § 2255 is unavailable. Trenkler v. United States, 536 F.3d 85, 98 (1st Cir. 2008). Successful petitions for a writ of error coram nobis are exceptionally rare, and the Supreme Court has held that they should be granted "only under circumstances compelling such action to achieve justice." George, 676 F.3d at 253–54 (quoting Morgan, 346 U.S. at 511).

The First Circuit has adopted a tripartite test that is administered in a flexible, common-sense manner to determine whether a petitioner is eligible for coram nobis relief. Id. at 255. A petitioner must: (1) explain his failure to seek earlier relief from the judgment; (2) show that he continues to suffer significant collateral consequences from the judgment; and (3) demonstrate that the judgment resulted from an error of the most fundamental character. Id. at 254 (citing United States v. Barrett, 178 F.3d 34, 56 n.20 (1st Cir. 1999); Hager v. United States, 993 F.2d 4, 5 (1st Cir. 1993)). Satisfying the three-part test "is a necessary, but not a sufficient, condition for the issuance of the writ." Id. at 255. Even if the petitioner meets all three of the conditions in the test, the court retains discretion to withhold the remedy "where the interests of justice so

dictate." Id. at 251. Ultimately, issuing or denying a writ of error coram nobis must hinge on what is most compatible with the interests of justice. Id. at 259.

## III. DISCUSSION

Despite having pled guilty to the crimes at issue, Petitioner argues that his 1984 conviction involved fundamental errors and violations of his due process rights because his counsel's representation was constitutionally deficient, the prosecution withheld evidence, and the court failed to inform Petitioner of the nature of the charges he faced and to ensure that his plea was voluntary. [ECF No. 3]. Petitioner also claims that he did not intend to waive his rights to a speedy trial under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161 *et seq.*, and that the circumstances of his conviction violated the Federal Rules of Criminal Procedure. [ECF No. 3 at 3–6]. Petitioner asserts that he continues to suffer collateral consequences from his 1984 convictions because they adversely affected the sentenced imposed for his 1999 convictions. He attempts to justify his failure to seek earlier relief by suggesting that his then defense counsel spent the time that "would have been [spent] appealing this instant conviction" secretly serving as a government informant to implicate Petitioner on other charges. See [ECF No. 14 at 4].

### a. Failure to Seek Earlier Relief From 1984 Convictions.

To satisfy the tripartite test related to a coram nobis petition, Petitioner first has the burden of adequately explaining his failure to seek earlier relief from his 1984 conviction, taking into account the procedural posture and the time that has elapsed. See George, 676 F.3d at 258 ("The further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment."). A writ of error coram nobis is "not available where other remedies would have existed but for the failure to raise the attack in a timely fashion, or where the attack is restricted as second or successive." United States v.

Brimage, No. 95-10046-PBS, 2012 WL 5398471, at *3 (D. Mass. Oct. 31, 2012). "The law does not require [a petitioner] to challenge his conviction at the earliest opportunity, but it does require him to have sound reasons for not doing so." Savarese v. United States, No. 86-00251, 2014 U.S. Dist. LEXIS 43404, at *21 (D. Mass Feb. 18, 2018) (quoting United States v. Kwan, 407 F.3d 1004, 1014 (9th Cir. 2005)).

Here, Petitioner did not appeal his 1984 conviction or seek other post-conviction relief, even though these remedies were available at the time of his conviction. See [ECF No. 1]; see also Strickland v. Washington, 466 U.S. 668, 687 (1984) (clarifying standard for an ineffective assistance of counsel claim on habeas review following a guilty plea); Brady v. United States, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). Petitioner's failure to proceed through the appellate process counsels strongly against a grant of writ of error coram nobis. See United States v. Travers, 514 F.2d 1171, 1177 (2d Cir. 1974) (limiting decision to coram nobis petitioners who "had gone through the full appellate process").

Further, in addition to not timely appealing his conviction, the resulting delay in any review of this case means that pertinent evidence that once existed is no longer available. Specifically, the transcript of the proceedings in question was likely destroyed in accordance with government policy. See 10 Guide to Judiciary Policy, Appx. 6B, Records Disposition Schedule 2(f)(1), available at http://www.uscourts.gov/sites/default/files/vol10_ch6_appx_6b.pdf (last updated December 19, 2018) (stating that records in non-trial criminal cases that result in a sentence of 15 years or less be destroyed within 15 years after the closing of the case). Petitioner attempts to explain his failure to seek earlier relief by suggesting that he was unable to appeal his

5

conviction due to his defense attorney acting as a "source of information" for the FBI and ATF "during the time [Petitioner] would have been appealing this instant conviction [and/or] sentencing," [ECF No. 14 at 4]. While deficiencies in the record when coupled with "sound reasons . . . for failure to seek appropriate earlier relief" may justify allowing the writ to proceed in some cases, see Morgan, 346 U.S. at 512–13, Petitioner's explanation for seeking relief when the transcript of these proceedings was still in existence is unavailing, and his speculation about his attorney's behavior warrants no weight. See Murray v. United States, 704 F.3d 23, 33 (1st Cir. 2013) ("'sheer speculation' is not enough to support the issuance of the writ of corum nobis'").

Petitioner's self-serving assertions, made thirty-four years after the fact, are not an adequate explanation for his failure to seek earlier relief, and his inability to explain his failure to seek earlier relief is, standing alone, fatal to his petition.

### b. Continuing Collateral Consequences

Even assuming that Petitioner could explain the delay in seeking redress, a petitioner for coram nobis relief must also show that he continues to suffer a significant collateral consequence from the judgment being challenged and that issuance of the writ will eliminate the consequence. Murray, 704 F.3d at 29. The First Circuit has held that more than the mere "stain of conviction" is required to show a continuing collateral consequence. Id. at 29 n.6 (citing George, 676 F.3d at 254–56). The Supreme Court has suggested, however, that an enhanced sentence stemming from a prior conviction may be a collateral consequence in a coram nobis inquiry. See Morgan, 346 U.S. at 512–13 ("Subsequent convictions may carry heavier penalties, civil rights may be affected.").

Petitioner argues that he received six criminal history points that adversely and unjustly affected his sentencing for the 1999 racketeering convictions, three of which he attributes to the 1984 convictions that are the subject of this petition, with the other three points relating to his New Hampshire state conviction. [ECF No. 14 at 5]. As the Government notes, however, only the three criminal history points stemming from his 1984 convictions are relevant to the instant corum nobis inquiry. See [ECF No. 11 at 7–8]. While the parties dispute the extent to which Petitioner's guideline sentencing range was affected by his prior 1984 convictions,[4] the Court does not find it necessary to resolve this disagreement.

In United States v. Bucci, the petitioner was sentenced to a term of imprisonment that fell within both the guideline sentencing range considering his prior criminal history, and the guideline sentencing range absent such criminal history. No. 97-10269-PBS, 2009 WL 2489171, at *6 (D. Mass. Aug. 11, 2009). The court rejected the Government's contention that petitioner's prior conviction had "only a *de minimis* impact" on his subsequent sentencing since it "fell within both guideline ranges," noting that this argument was speculative and failed to address the fact that petitioner could have been sentenced at the lower end of the range. Id. Given the difficulties associated with speculating as to the effects of the 1984 convictions on Petitioner's sentencing and considering that Petitioner has several other motions pending in his racketeering case, including challenges to the calculation of his sentence, the Court will assume without

---

[4] The Government argues that Petitioner's guideline sentencing range was life irrespective of whether the 1984 convictions were included in calculating his criminal history, and that the district court departed downwards due to codefendant disparity. [ECF No. 11 at 8]. Petitioner contends that he was facing a statutory maximum sentence of fifty years, and that the three criminal history points stemming from his 1984 convictions resulted in an "additional 5 plus years" on his sentence and more restrictive conditions of confinement. [ECF Nos. 3 at 4; 14 at 5].

7

deciding that Petitioner is suffering from collateral consequences as a result of the convictions at issue. The Court nonetheless denies his petition based on the other grounds explained herein.

        c.        **Error of the Most Fundamental Character**

Finally, as to the third prong of the tripartite test, a court may issue a writ of error coram nobis to correct errors "only in those cases where the errors were of the most fundamental character," such as in cases where such errors "rendered the proceeding itself irregular or invalid." George, 676 F.3d at 255 (quoting United States v. Mayer, 235 U.S. 55, 69 (1914)). The requirement that the error be "of the most fundamental character" is especially important in cases where a Petitioner is contesting a judgment that followed a guilty plea. Id. at 256 ("The interest of finality, always important in criminal cases, is of heightened concern when a conviction arises from a guilty plea, and counts against finding an error of the most fundamental character." (internal citations omitted)); see also Murray, 704 F.3d at 32 ("[T]hose who have pled guilty are subject to higher standards for issuance of corum nobis."). Petitioner asserts that his 1984 convictions resulted from the fact that he was not aware of the nature of the offenses charged as required by Federal Rule of Criminal Procedure 11 as well as due process violations, the ineffective assistance of counsel, the government's withholding of exculpatory evidence, and supposed violations of his right to a speedy trial.[5] [ECF No. 3 at 1–3, 5; ECF No. 14 at 1].

---

[5] As an initial matter, Petitioner's allegation that his speedy trial rights were violated is particularly weak. The docket for Petitioner case indicates that the case was filed on April 12, 1984, a plea of guilty was entered on July 16, 1984, and a disposition was entered on August 3, 1984. [ECF No. 1]. Whatever statutory violations could conceivably have occurred during those four months, a violation of Petitioner's Sixth Amendment right to a speedy trial did not. See generally Barker v. Wingo, 407 U.S. 514 (1972) (five-year delay for murder trial did not amount to violation of Sixth Amendment). To the extent that Plaintiff alleges that his fundamental rights were violated as a result of noncompliance with the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161 et seq., Plaintiff has offered no case law to support the suggestion that such a violation rises to an error of the most fundamental character for the purposes of a writ of error coram nobis.

Petitioner has not presented any evidence that suggests he was not aware of the nature of the offenses charged other than his own self-serving attestations. His petition alleges that the Court failed to appraise him of the charges in accordance with Federal Rule of Criminal Procedure 11. [ECF Nos. 3 at 3; 14 at 2]. Rule 11 sets for procedural requirement meant to "ascertain the plea's voluntariness" and to "develop a more complete record to support [the judge's] determination in a subsequent post-conviction attack." McCarthy v. United States, 394 U.S. 459, 466 (1969). Although compliance with Rule 11 is not "constitutionally mandated," "the record of a guilty plea must affirmatively disclose that the defendant made his plea intelligently and voluntarily." United States v. Ward, 518 F.3d 75, 83 (1st Cir. 2008) (quoting McCarthy, 394 U.S. at 465; Boykin v. Alabama, 395 U.S. 238, 81 (1969)). Here, as discussed *supra*, the record is not available because of Petitioner's tardiness in raising these issues, and the Court concludes that Petitioner's own attestations are insufficient, in the context of a coram nobis petition, to demonstrate that he did not voluntarily enter a plea of guilty with an understanding of the offenses charged.

Petitioner's ineffective assistance of counsel claim is based on his attorney's alleged failure to advise him of the consequences of entering a guilty plea, specifically the risk of an enhanced sentence for future crimes. [ECF Nos. 3 at 1; 14 at 14–15]. To succeed on this argument, Petitioner must show, at the very least, that his counsel's "performance was deficient," and that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Petitioner cites to the Supreme Court's holding in Padilla v. Kentucky, 559 U.S. 356 (2010), to support his argument that counsel's failure to inform him of the risk of an enhanced sentence satisfied the first prong of this test. [ECF No. 14 at 14]. The argument that Padilla supports a finding of fundamental error fails for at least two reasons. First, Padilla does not apply

9

retroactively under federal law and thus does not apply to his 1984 convictions.  Chaidez v. U.S., 568 U.S. 342, (2013).[6]  Second, the Padilla Court held that "counsel must inform her client whether his [guilty] plea carries a *risk of deportation*," stressing the unique nature of deportation and its "seriousness . . . as a consequence of criminal plea."  Id. at 374 (emphasis added).  The Court explicitly declined to decide the broader question of whether the "distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance'" is appropriate in Sixth Amendment considerations, finding that deportation is "uniquely difficult to classify as either."  Id. at 356–57 (citing Strickland, 466 U.S. at 689); see also Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Although Padilla has been said to have "altered the law of most jurisdictions" by imposing an obligation to warn clients of deportation risks, it has not been applied to collateral consequences more generally.  See Chaidez, 568 U.S. at 352.  In the absence of Supreme Court guidance with respect to this issue, "state and lower federal courts . . . [have] almost unanimously concluded that the Sixth Amendment does not require attorneys to inform their clients of a conviction's collateral consequences."  Id. at 350; see also Steele v. Murphy, 365 F.3d 14, 17 (1st Cir. 2001) ("[A] defendant need only be 'fully aware of the direct consequences' of such a plea." (quoting Brady, 397 U.S. at 755)); Bucci, 2009 WL 2489171, at *10 (noting that the courts have no duty to inform defendants of the collateral consequences of guilty pleas, such as enhanced sentencing for future crimes) (citing United States v. Salmon, 944 F.2d 1106, 1130 (3rd Cir. 1991)).  The Court therefore cannot conclude that a fundamental error resulted from

---

[6] While Massachusetts courts have held that under state law defendants may retroactively attack their convictions based on Padilla, federal law applies here.  See Commonwealth v. Sylvain, 995 N.E.2d 760, 762 (Mass. 2013).

10

counsel's alleged failure to warn Petitioner of the potential collateral consequences of pleading guilty.

Lastly, Petitioner claims fundamental error based on the government's alleged withholding of "exculpatory evidence." [ECF Nos. 3 at 6, 14 at 9]. The First Circuit has held that the materiality of withheld evidence is a "necessary but not a sufficient condition" for a finding of fundamental error in a corum nobis inquiry "given the extraordinary nature of the writ," and that "[w]hether an error implicating material evidence qualifies as fundamental depends on the particular facts of the case – for instance, if the withheld evidence supported a colorable claim of actual innocence." Murray, 704 F.3d at 30. While Petitioner categorizes the withheld evidence as "exculpatory," he provides no further facts as to the nature of the withheld evidence, whether it would have supported "a colorable claim of actual innocence" or any other basis for a finding of fundamental error. Id. Thus, Petitioner has failed to credibly allege an error of the most fundamental character.

### d. The Interests of Justice

Finally, even if Petitioner had satisfied the tripartite test, which he has not, "issuing or denying a writ of error coram nobis must hinge on what is most compatible with the interests of justice." George, 676 F.3d at 258 (citing Morgan, 346 U.S. at 511). In other words, the Court retains the discretion to "withhold the remedy where the interests of justice so dictate." Id. at 251. "[W]hen a defendant seeks to vacate a guilty-plea conviction by way of coram nobis, red flags accompany that request" and "great caution is warranted." Id. at 257–58. This is particularly true here given the nearly thirty-five years that have passed since his conviction. Furthermore, in George, the First Circuit noted that it had discretion to deny the petitioner's writ, even if the petitioner satisfied the tripartite test, because the petitioner had waived indictment,

11

pled guilty, and declined to take a direct appeal or petition for habeas review. See id. at 258. A criminal defendant's election to plead guilty, perhaps to minimize his exposure or for other tactical reasons and then failing to timely appeal may lull the prosecution into not developing a more robust factual record, and it hardly seems fair to allow a defendant to use this to contest the conviction.

Petitioner's failure to challenge his guilty plea for a period of almost thirty-five years despite other available remedies lends itself to the presumption that it would be "dubious that granting the writ w[ould] promote the interests of justice." Id. at 260. Where it is also "questionable that an error of the most fundamental character has transpired," this Court should "decline to exercise its discretion so as to disturb a judgment that has long since become final." Id. However "improvident" Petitioner's decision to plead guilty may now appear to him "in light of his subsequent criminal conviction and enhanced sentencing, it does not render his guilty plea . . . invalid." Bucci, 2009 WL 2489171, at *10.

## IV. CONCLUSION

Petitioner's petitioner for a writ of error coram nobis does not meet the tripartite test for eligibility outlined in George. Further, issuance of the writ under the facts and circumstances of the case would not be compatible with the interests of justice. Accordingly, Petitioner's motion for a writ of error coram nobis is DENIED.

**SO ORDERED.**

January 11, 2019  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE